UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PETER MILTON JOSEPH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No: 00 C 5456 |
| ) | |
| BEVERLY LACOSTE and ) | Judge John W. Darrah |
| THE CHICAGO BOARD OF EDUCATION, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Peter Milton Joseph, filed suit against Beverly LaCoste and the Chicago Board of Education (the "Board"). After a number of claims were dismissed, claims remain against: (1) the Board for discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5; (2) the Board for retaliation in violation of Title VII; and (3) Defendants for violations of the Voting Rights Act, 42 U.S.C. § 1973. Presently before the Court is Defendants' Motion for Summary Judgment. For the following reasons, that motion is granted.

## LEGAL STANDARD

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (*Celotex*). Thus, although the moving party on a motion for summary judgment is responsible

for demonstrating to the court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that a genuine issue of material fact exists and to show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986) (*Anderson*); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (*Matsushita*); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250.

## BACKGROUND

Plaintiff, a *pro se* litigant, was provided with the "Notice to *Pro Se* Litigants" required under Local Rule 56.2. This notice explains Plaintiff's responsibilities in responding to a motion for summary judgment. Therefore, the undisputed facts, for the purposes of this motion, taken from the parties' Local Rule 56.1(a) & (b) statements of material facts (referred to herein as "Pl.'s 56.1" and "Defs.' 56.1") and exhibits, are as follows.

Plaintiff is an African-American employed by the Chicago Public Schools as a teacher at Phillips High School. Defs.' 56.1 ¶ 1. Plaintiff applied to the Advanced Placement Program for

2

funds to attend an Advanced Placement seminar in New York. Defs.' 56.1 ¶ 10. To be eligible for funds, a teacher participated in a competitive essay program. Defs.' 56.1 ¶ 7. The principal at the school at that time did not sign Plaintiff's request, as required to do so by the Advanced Placement Program. Defs.' 56.1 ¶¶ 7, 11. Plaintiff also sought funds from the school's discretionary budget but did not receive any such funding. Defs.' 56.1 ¶ 11. Plaintiff assumed, without personal knowledge, that for white teachers, Advanced Placement forms were signed or discretionary funding was provided. Defs.' 56.1 ¶¶ 12, 20.

Plaintiff also attended Advanced Placement seminars in Oxford, England, for several summers, but never received any financial assistance from the Board to attend. Defs.' 56.1 ¶ 6. The funds were not provided by the Board but, rather came from the Advanced Placement Program. Defs.' 56.1 ¶ 7. LaCoste, Plaintiff's principal, refused to sign Plaintiff's requests. Defs.' 56.1 ¶ 7. White teachers attended Advanced Placement conferences in New York or Illinois; however, Plaintiff has no personal knowledge of how the white teachers paid to attend the conferences. Defs.' 56.1 ¶¶ 8, 9, 20.

Plaintiff also applied for Oppenheimer grants. Oppenheimer decides which teachers receive grants based on an application process. Defs.' 56.1 ¶ 14. Plaintiff applied for these grants, but LaCoste refused to sign his applications. Defs.' 56.1 ¶¶ 14, 16. One year when Plaintiff's application was not signed, Plaintiff believes, without personal knowledge, an application for a white teacher was signed by LaCoste. Defs.' 56.1 ¶ 15.

Plaintiff submitted a request to attend a conference in Germany which was signed by LaCoste. Defs.' 56.1 ¶ 19, Defs.' Ex. 1 at 50. The conference was sponsored by German authorities, and a German bank provided financial assistance. Defs.' 56.1 ¶ 19. Plaintiff

3

believes, without personal knowledge, a white teacher was selected to go to the conference because LaCoste submitted a recommendation on his behalf. Defs.' 56.1 ¶¶ 19, 21.

Plaintiff also asked to attend another conference. Defs.' 56.1 ¶ 22. LaCoste allowed him to attend but provided no funding. Defs.' 56.1 ¶ 22. Other teachers were also allowed to attend; and Plaintiff assumed, without personal knowledge, that they received funding. Defs.' 56.1 ¶ 22.

In multiple years, Plaintiff attended another conference with funding approved by LaCoste. Defs.' 56.1 ¶ 13, Defs.' Ex. 1 at 37. However, Plaintiff and LaCoste disputed one expense because Plaintiff allowed a teacher to have different accommodations. Defs.' 56.1 ¶ 13, Defs.' Ex. 1 at 38-39. According to Plaintiff, this expense was orally denied and LaCoste told Plaintiff that he should not have paid for the change in accommodations. Defs.' 56.1 ¶ 13, Defs.' Ex. 1 at 38-39.

Plaintiff requested, but was denied, assignment to a position where he could earn extra pay. Defs.' 56.1 ¶ 23. Without personal knowledge, Plaintiff believes that certain white teachers received extra pay. Defs.' 56.1 ¶¶ 24, 25.

LaCoste named Plaintiff the English department chair, but he was later removed from that position in April 2000 and before he filed his Equal Employment Opportunity Commission charge ("EEOC"). Defs.' 56.1 ¶¶ 26-27, 38; Defs.' Ex. 1 at 112. Plaintiff was removed from his position because: (1) he failed to make meeting agendas, (2) he failed to effectively communicate with LaCoste, (3) other teachers were complaining, and (4) LaCoste believed morale would increase if Plaintiff was removed from his position. Defs.' 56.1 ¶ 28. Plaintiff believes, without

personal knowledge, that LaCoste removed Plaintiff from the department chair position in retaliation for a bad evaluation Plaintiff gave LaCoste when Plaintiff was on the local high school council and for Plaintiff's participation as a union delegate. Defs.' 56.1 ¶¶ 30, 38.

In evaluations from LaCoste, Plaintiff received one satisfactory rating and two excellent ratings. Defs.' 56.1 ¶ 33. Because he did not receive higher ratings, Plaintiff believes that he was denied privileges such as receiving the best classroom, being named reading teacher, having a first-floor classroom, and receiving funding to attend conferences. Defs.' 56.1 ¶ 35. Plaintiff believes, without personal knowledge, he received lower ratings because he was black. Defs.' 56.1 ¶ 34. Plaintiff believes that LaCoste gave white teachers "superior" ratings and special privileges, but Plaintiff does not know the ratings other teachers received. Defs.' 56.1 ¶ 36, 37.

Plaintiff also believes he suffered adverse employment actions when Defendants negligently allowed a burglar to steal his television and school-issued computer in the summer of 2000. Defs.' 56.1 ¶ 43. Plaintiff was issued a new computer. Defs.' 56.1 ¶ 43. Although he lacks personal knowledge, Plaintiff also believes that Defendants encouraged tampering of Plaintiff's car and the theft of Plaintiff's motorcycle. Defs.' 56.1 ¶ 43.

Plaintiff filed his charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 20, 2000. Defs.' 56.1 ¶ 38. Plaintiff further believes he suffered retaliation by: (1) receiving a one-day suspension without pay on March 15, 2001; (2) having pay, which was eventually given to Plaintiff, withheld from his paycheck the first pay period of June 2001; and (3) not receiving Labor Day pay in 2001. Defs.' 56.1 ¶¶ 39-41; Defs.' Ex. 1 at

92. However, Plaintiff received his one-day suspension in March 2001 for failing to attend meetings. Defs.' 56.1 ¶ 39. Plaintiff also believes, without personal knowledge, that he did not receive his Labor Day pay as a result of LaCoste's arbitrariness. Defs.' 56.1 ¶ 40.

Plaintiff ran for a position on the local high school council in April 2000 but lost in a non-binding poll to a white teacher. Defs.' 56.1 ¶ 44. Plaintiff believes, without personal knowledge, that LaCoste campaigned for the white teacher in private conversation. Defs.' 56.1 ¶ 45. Plaintiff also believes that Defendants prevented cafeteria workers from voting by scheduling a conference on election day. Defs.' 56.1 ¶ 46.

## ANALYSIS

Plaintiff has brought numerous allegations against Defendants for discrimination, retaliation and violations of the Voting Rights Act.

Under Title VII, discrimination occurs when a Plaintiff suffers an adverse employment action based on an improper discriminatory animus. *See Jordan v. City of Gary*, 396 F.3d 825 (7th Cir. 2005). Retaliation occurs when an employer takes an adverse action against an employee for engaging in statutorily protected conduct, such as reporting discrimination. *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003) (citing 42 U.S.C. § 2000e-3). Plaintiff may avoid summary judgment on his Title VII claims through either the direct method or the indirect "burden-shifting" method. *Rogers*, 320 F.3d at 753.

Under the direct method, Plaintiff may present "direct" evidence, which "essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus." *Rogers*, 320 F.3d at 753. Plaintiff, who does not have any direct evidence, may also rely upon circumstantial evidence, which consists of "ambiguous statements, suspicious timing,

discrimination [or retaliation] against other employees, and other pieces of evidence none conclusive in itself but together composing a convincing mosaic of discrimination [or retaliation] against Plaintiff." *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003) (*Adams*). The circumstantial evidence must point to a discriminatory or retaliatory reason for the employer's action. *Adams*, 324 F.3d at 939.

Plaintiff has failed to present any affidavits, depositions, answers to interrogatories, or admissions to demonstrate, through specific evidence, that a genuine issue of material fact exists as to whether circumstantial evidence exists which points to the Board's discriminatory or retaliatory reason for the alleged adverse employment actions. Instead, as evidenced by his deposition answers, Plaintiff relies upon conjecture, speculation, and his own beliefs and assumptions to support his claims. However, "statements outside the [Plaintiff's] personal knowledge or statements that are the result of speculation or conjecture or merely conclusory do not meet" the requirements of Federal Rule of Civil Procedure 56 and cannot be considered on summary judgment. *Stagman v. Ryam*, 176 F.3d 986, 995 (7th Cir. 1999).

Under the indirect method, Plaintiff must first prove a *prima facie* case of discrimination or retaliation. For a discrimination claim, Plaintiff must demonstrate that: (1) he is a member of a protected class; (2) at the time of the adverse employment action, he was meeting his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than other similarly situated employees who are not in his protected class. *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 326 (7th Cir. 2002). For a retaliation claim, Plaintiff must demonstrate that (1) after lodging his complaint (2) only he, and not any other similarly situated employee who did not complain, (3) was subjected to an adverse employment

7

action (4) even though Plaintiff was performing his job in a satisfactory manner. *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 642 (7th Cir. 2002) (*Stone*). For both retaliation and discrimination claims, the employer may then produce a legitimate, non-discriminatory reason for taking the adverse employment action. *Stone*, 281 F.3d at 642-43. Plaintiff may then rebut this legitimate, non-discriminatory reason by demonstrating that motive was pretextual. *Stone*, 281 F.3d at 643.

Plaintiff has failed to present any affidavits, depositions, answers to interrogatories, or admissions to demonstrate, through specific evidence, that a genuine issue of material fact exists as to whether he was treated less favorably than similarly situated employees who: (1) are not members of his protected class or (2) did not file EEOC charges. Plaintiff has also failed to present any affidavits, depositions, answers to interrogatories, or admissions to demonstrate that a genuine issue of material fact exists as to whether he suffered adverse employment actions. Plaintiff relies upon conjecture, speculation, and his own self-serving statements to support the claims that other teachers were treated more favorably or that he suffered adverse employment actions. As discussed above, these statements do not satisfy the requirements of Rule 56.

Finally, Plaintiff has brought a Voting Rights Act claim against Defendants for an improper election for a seat on the local school council. However, under Illinois law, teachers are not elected to the local school council. Instead, a non-binding, advisory poll is taken to ascertain the preferences of the school staff. 105 ILCS 5/34-2.1(*l*)(ii). The local school board of education has absolute discretion in appointing teachers to the local school council. 105 ILCS 5/34-2.1(*l*)(i)-(ii). The Voting Rights Act does not apply when appointments are used. *See Bradley v. Work*, 154 F.3d 704, 709 (7th Cir. 1998) (citing *Chisom v. Roemer*, 501 U.S. 380, 401

8

(1991)). Even if the Voting Rights Act did apply, Plaintiff has not submitted any affidavits, depositions, answers to interrogatories, or admissions to demonstrate, through specific evidence, that a genuine issue of material fact exists as to whether the Act was violated.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted.

Dated: 7-27-05

JOHN W. DARRAH
United States District Judge